Kirk J. Anderson (CA SBN 289043)
(Pro Hac Vice forthcoming)
**BUDO LAW P.C.**
5610 Ward Rd., Suite #300
Arvada, CO 80002
Telephone: (720) 225-9440
Email: kanderson@budolaw.com

Charles L. Roberts (Utah Bar #5137)
**WASATCH-IP, A Professional Corp.**
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121
Telephone: (801) 292-5300
Email: croberts@wasatch-ip.com

*Attorneys for Plaintiff, NewFlux, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NEWFLUX, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>ZAGG INC.,<br><br>    *Defendant.* | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Civil Action No. 1:25-cv-00033-RJS<br><br>Judge Robert J. Shelby |

## ORIGINAL COMPLAINT

1.    Plaintiff NewFlux, LLC ("NewFlux" or "Plaintiff"), by and through its counsel, hereby brings this action for patent infringement and breach of contract against Zagg Inc. ("Zagg" or "Defendant"), alleging infringement of the validly issued U.S. Patent Nos. 9,511,903 and 9,131,756 (the "Patents-in-Suit"), attached hereto as Exhibits A and B.

## NATURE OF THE ACTION

2.      This is an action for patent infringement arising under the United States Patent Act 35 U.S.C. §§ 1 et seq., including 35 U.S.C. §271.

## PARTIES

3.      NewFlux, LLC is a Utah limited liability company with a principal office at 791 East 600 South, Centerville, Utah 84014.

4.      On information and belief, Zagg Inc. is a Nevada corporation with a principal place of business at 910 West Legacy Center Way, Suite 500, Midvale, UT 84047.

## JURISDICTION AND VENUE

5.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 et seq. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, 1338(a), and 1367.

6.      This action also includes a breach of contract claim brought under Utah state law. This Court has supplemental jurisdiction over Plaintiff's state law claim at the very least pursuant to 28 U.S.C. § 1367 because the state law claim is integrally interrelated with Plaintiff's federal claim and arises from a common nucleus of operative facts such that the administration of Plaintiff's state law claim with its federal claim furthers the interest of judicial economy.

7.      The Court has personal jurisdiction over Defendant for the following reasons: (1) Defendant is present within or has minimum contacts within the State of Utah and the District of Utah; (2) Defendant has purposefully availed itself of the privileges of conducting business in the State of Utah and in this district; (3) Defendant has sought protection and benefit from the laws of the State of Utah; (4) Defendant regularly conducts business within the State of Utah and within this district, and Plaintiff's cause of action arises directly from Defendant's business

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

contacts and other activities in the State of Utah and in this district; and (5) Defendant has purposely availed itself of the privileges and benefits of the laws of the State of Utah.

8.      Defendant, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and services in the United States, the State of Utah, and the District of Utah including but not limited to the products which infringe the Patent-in-Suit. Upon information and belief, Defendant has committed patent infringement in the State of Utah and in this district; Defendant solicits and has solicited customers in the State of Utah and in this district; and Defendant has paying customers who are residents of the State of Utah and this district and who each use and have used the Defendant's products and services in the State of Utah and in this district.

9.      Venue is proper in the District of Utah over Zagg pursuant to 28 U.S.C. §§ 1400(b). Defendant maintains multiple regular and established places of business in this district, has transacted business in this district, and has directly and/or indirectly committed acts of patent infringement in this district. For instance, upon information and belief, Zagg maintains a regular and established place of business at 910 West Legacy Center Way, Suite 500, Midvale, UT 84047.

## PATENTS-IN-SUIT

10.      Plaintiff incorporates the above paragraphs herein by reference.

11.      On December 6, 2016, U.S. Patent No. 9,511,903 titled "Covering, protecting, and positioning a portable electronic device" was duly and legally issued by the United States Patent and Trademark Office. The '903 Patent is presumed valid and enforceable.

12.      On September 15, 2015, U.S. Patent No. 9,131,756 titled "Device covering, protecting, and positioning a portable electronic device" was duly and legally issued by the United States Patent and Trademark Office. The '756 Patent is presumed valid and enforceable.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

13. Plaintiff is the assignee of all right, title and interest in the Patents-in-Suit including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents-in-Suit.

14. The Patents-in-Suit relate generally to improvements in covering, protecting, and positioning portable electronic devices. *See* Ex. A at 1:24-25. The claimed inventions disclosed in the Patents-in-Suit were not well-understood, routine, or conventional. At the time the '903 Patent was filed, various attempts were made to protect portable electronic devices without making them unwieldy or unnecessarily heavy. *See* Ex. A at 1:36-51. Some of these solutions made the portable electronic devices bulky and cumbersome to use, while others improved usability but failed to completely protect the devices from damage and wear. *See* Ex. A at 1:44-48. Furthermore, some of these protective solutions required several steps to remove them from the devices they protected, thereby resulting in an inconvenient user experience. *See* Ex. A at 1:48-51.

15. The Patents-in-Suit addressed these technical challenges by, for example, teaching a protective cover device that includes a display protector that is configured to provide a contact surface to support the portable electronic device when articulated to a viewing position, adding usability and stability. *See* Ex. A at 2:1-3. The protective cover device further includes an articulating member connected to the display protector. *See* Ex. A at 2:3-5. The articulating member is configured to prop up the portable electronic device when the display protector is articulated to the viewing position, again optimizing usability with a mechanism that does not add significant bulk to the device. *See* Ex. A at 2:5-7. The articulating member includes a magnetic fastener configured to magnetically detachably fasten to a compatible magnetic component locatable on a backside of the portable electronic device, making the device quicker and easier to

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

adjust. *See* Ex. A at 2:7-11. The device further includes a display protector configured to substantially cover a display of a portable electronic device when articulated to a protective position, thereby protecting the screen when needed while again adding little bulk overall. *See* Ex. A at 1:64-67.

16.     The inventions disclosed in the Patents-in-Suit were not well-understood, routine, or conventional. Additionally, the novel inventions described in the Patents-in-Suit addressed unsolved problems in the art, such as image quality on mobile device displays and issues with cellular reception. *See generally* Ex. A, Summary.

17.     The inventions described in the Patents-in-Suit are physical, tangible products and thus (a) do not merely recite the performance of a familiar business practice with a requirement to perform it on the Internet, (b) cannot be performed with pen and paper or in the human mind, and (c) are not merely drawn to longstanding human activities. Moreover, the claims of the Patent-in-Suit include inventive concepts and recite combinations of elements sufficient to ensure that the claims practice eligible subject matter.

<u>BACKGROUND</u>

18.     Plaintiff NewFlux, LLC is an innovator in the consumer electronics space, with over fifteen years of innovation in developing protective cases for portable electronic devices.

19.     One of the co-founders of NewFlux, LLC worked for Defendant as a business development manager from 2009 to 2010, aiding Mall Cart Program development. During that time, this NewFlux, LLC co-founder made connections with a number of Defendant's executive team.

20.     NewFlux developed several innovations that represented significant advancements in convenience and effectiveness of protective cases for portable electronic devices.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

Aided by a successful Kickstarter campaign and with multiple patent applications filed, NewFlux, LLC was founded in 2013 with the intention of bringing its own line of protective cases to market.

21.     In 2014, Defendant invited Plaintiff to demonstrate its innovations at Defendant's headquarters. During that meeting, Defendant showed interest in NewFlux's FluxFlap protective cases. Defendant requested a prototype from Plaintiff to analyze in confidence, which Plaintiff provided. The parties also entered into a non-disclosure agreement (the "NDA"), attached hereto as Exhibit C. Once the NDA was signed, Defendant requested a copy of Plaintiff's pending patent application No. 14/819,176 (provided on June 16, 2014). Defendant also requested various trade secrets from Plaintiff, none of which were available to the public and all of which Plaintiff provided. These trade secrets included: (1) three additional prototypes with modifications that were not available to public, in addition to the initial prototype previously provided on July 21, 2014; (2) an unbundled bill of materials with itemized costs for each component part of the prototypes (provided on July 21, 2014); and (3) digital renderings of the initial prototype (provided on July 21, 2014).

22.     On August 27, 2014, Defendant advised Plaintiff that it was not interested in purchasing or licensing Plaintiff's FluxFlap products.

23.     Between August 27 and August 29, 2014, Plaintiff requested that Defendant return Plaintiff's prototypes and magnet samples (the "Confidential Information") per the "Return/Destruction of Information" clause of the NDA, which reads: "All Confidential Information . . . shall be returned to Disclosing Party at Disclosing Party's request."

24.     Defendant informed Plaintiff that the Confidential Information had gone missing.

25.     Plaintiff repeatedly requested the return of its Confidential Information, via phone

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

and email, and was told each time that the Confidential Information was still missing.

26.    On September 8, 2014, Defendant informed Plaintiff that not only had the Confidential Information not been located, but that Zagg had no information whatsoever regarding their whereabouts.

27.    On September 24, 2014, a representative for Defendant informed Plaintiff that the magnet samples had been found and would be returned to Plaintiff.

28.    On November 3, 2014, more than two months after Plaintiff requested the return of its Confidential Information, a representative for Defendant informed Plaintiff that the missing Confidential Information had "appeared on my desk" and would be returned to Plaintiff. Later that day on November 3, 2014, another representative for Defendant emailed Plaintiff and explained that an "unnamed individual" had returned the Confidential Information.

29.    Later, Defendant Zagg would release its Pro Keys line of iPad cases with a nearly identical design to that of the FluxFlap.

## ACCUSED PRODUCTS

30.    Defendant makes, uses, offers for sale and sells in the U.S. products, systems, and/or services that infringe the Patents-in-Suit, including, but not limited to the Zagg Pro Keys for 10.2" iPad (Gen 7, 8, & 9); Zagg Pro Keys with Trackpad for 10.2" iPad (Gen 7, 8, & 9); Zagg Pro Keys for 10.9" iPad (Gen 10); Zagg Pro Keys for 12.9" iPad Pro (Gen 3, 4, 5, & 6); Zagg Pro Keys with Trackpad for 12.9" iPad Pro (Gen 3, 4, 5, & 6); Zagg Pro Keys for iPad Air, 10.9" (Gen 4 & 5); Zagg Pro Keys for iPad Air, 11" (M2); Zagg Pro Keys for iPad Air, 13" (M2); Zagg Pro Keys with Trackpad for iPad Air, 13" (M2);  and Zagg Pro Keys for 11" iPad Pro (Gen 1, 2, 3, & 4); cumulatively, the "Accused Products."

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT I
**(Infringement of U.S. Patent No. 9,511,903)**

31.     Plaintiff incorporates the above paragraphs herein by reference.

32.     The '903 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on December 6, 2016. The '903 Patent is presumed valid and enforceable. *See* 35 U.S.C. § 282.

33.     Plaintiff is the owner by assignment of the '903 Patent and possesses all rights of recovery under the '903 Patent, including the exclusive right enforce the '903 Patent and pursue lawsuits against infringers.

34.     Upon information and belief, to the extent any marking was required by 35 U.S.C. § 287 with regard to the '903 Patent, Plaintiff has complied with such requirements.

35.     Without a license or permission from Plaintiff, Defendant has infringed and continues to directly and indirectly infringe on one or more claims of the '903 Patent by importing, making, using, offering for sale, and/or selling products and devices that embody the patented inventions, including, without limitation, one or more of the patented '903 systems and methods, in violation of 35 U.S.C. § 271.

**Direct Infringement – 35 U.S.C. §271(a)**

36.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

37.     Without a license or permission from Plaintiff, Defendant has infringed and continues to directly infringe on one or more claims of the '903 Patent by importing, making, using, offering for sale, or selling its Accused Products that embody the patented inventions, including, without limitation, one or more of the patented '903 systems and methods, in violation

8

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

of 35 U.S.C. § 271.

38.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '903 Patent, for example, internal testing, quality assurance, research and development, and troubleshooting of its Accused Products. *See, e.g., Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (noting that "testing is a use of the invention that may infringe under §271(a)").

39.     By way of example, Defendant has infringed and continues to infringe at least one or more claims of the '903 Patent, including at least Claim 1. Attached hereto as Exhibit D is an exemplary claim chart detailing representative infringement of Claim 1 of the '903 Patent.

**Induced Infringement – 35 U.S.C. §271(b)**

40.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

41.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '903 Patent in the State of Utah, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, products incorporating the accused technology. End users include, for example, Defendant's customers and other third parties interacting with the accused technology.

42.     Defendant had pre-suit knowledge of the Patents-in-Suit as early as June 16, 2014 when it received Plaintiff's pending patent application for one of the Patents-in-Suit. Defendant also received pre-suit knowledge of the Patents-in-Suit on October 23, 2023 when it received a letter from Plaintiff notifying Defendant of Defendant's infringement. Finally, Defendant had knowledge of the Patents-in-Suit at the time of filing of this suit. *See EON Corp. IP Holdings, LLC v.*

9

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

*Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed.Cir.2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

43.    Defendant knew the actions of making, using, selling, offering for sale, and/or importing the Accused Products infringes the '903 Patent and yet Defendant induced and continues to induce others—including partners, customers, and third parties—to directly infringe at least one claim of the '903 Patent under 35 U.S.C. § 271(b). Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

44.    For example, Defendant induces its users to use the infringing Accused Products with their electronic devices, actively prompting infringement by advertising products and providing instructions on how to use them. *See, e.g.*, Ex. F [1] (advertising and selling the Accused Products and providing instructions on how to implement infringing features); Ex. G [2], Ex. H [3] and Ex. I [4] (advertising infringing features); Ex. J [5] (demonstrating infringing features). These resources both advertise the infringing technology and provide detailed directions on how it functions.

45.    The allegations herein support a finding that Defendant induced infringement of

---

[1] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[2] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[3] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[4] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[5] Available at https://www.youtube.com/watch?v=9HcB2DxC6S4.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

the '903 Patent. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

<u>Contributory Infringement – 35 U.S.C. § 271(c)</u>

46.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

47.     Defendant had pre-suit knowledge of the Patents-in-Suit as early as June 16, 2014 when it received Plaintiff's pending patent application for one of the Patents-in-Suit. Defendant also received pre-suit knowledge of the Patents-in-Suit on October 23, 2023 when it received a letter from Plaintiff notifying Defendant of Defendant's infringement. Finally, Defendant had knowledge of the Patents-in-Suit at the time of filing of this suit. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed.Cir.2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

48.     On information and belief, Defendant contributes to its users' infringement of at least Claim 1 of the '903 Patent by actions of making, using, selling, offering for sale, and/or importing the Accused Products that have no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009) (holding that the "substantial non-infringing use" element of a contributory infringement claim applies to an infringing feature or component, and that an "infringing feature" of a product does not escape liability simply because the product

as a whole has other non-infringing uses).

**Willful Infringement**

49.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

50.     Defendant had pre-suit knowledge of the Patents-in-Suit as early as June 16, 2014 when it received Plaintiff's pending patent application for one of the Patents-in-Suit. Defendant also received pre-suit knowledge of the Patents-in-Suit on October 23, 2023 when it received a letter from Plaintiff notifying Defendant of Defendant's infringement. Finally, Defendant had knowledge of the Patents-in-Suit at the time of filing of this suit. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed.Cir.2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

51.     Despite its knowledge of the '903 Patent, Defendant has continued to make, use, sell, offer for sale, and/or import the Accused Product in egregious disregard of Plaintiff's patent rights. Defendant has acted recklessly and engaged in willful, wanton, and deliberate acts of infringement of the '903 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT II**
**(Infringement of U.S. Patent No. 9,131,756)**

52.     Plaintiff incorporates the above paragraphs herein by reference.

53.     The '756 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on September 15, 2015. The '756 Patent is

12

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

presumed valid and enforceable. *See* 35 U.S.C. § 282.

54.     Plaintiff is the owner by assignment of the '756 Patent and possesses all rights of recovery under the '756 Patent, including the exclusive right enforce the '756 Patent and pursue lawsuits against infringers.

55.     Upon information and belief, to the extent any marking was required by 35 U.S.C. § 287 with regard to the '756 Patent, Plaintiff has complied with such requirements.

56.     Without a license or permission from Plaintiff, Defendant has infringed and continues to directly and indirectly infringe on one or more claims of the '756 Patent by importing, making, using, offering for sale, and/or selling products and devices that embody the patented inventions, including, without limitation, one or more of the patented '756 systems and methods, in violation of 35 U.S.C. § 271.

<u>Direct Infringement – 35 U.S.C. §271(a)</u>

57.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

58.     Without a license or permission from Plaintiff, Defendant has infringed and continues to directly infringe on one or more claims of the '756 Patent by importing, making, using, offering for sale, or selling products and devices that embody the patented inventions, including, without limitation, one or more of the patented '756 systems and methods, in violation of 35 U.S.C. § 271.

59.     Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '756 Patent, for example, internal testing, quality assurance, research and development, and troubleshooting. *See, e.g., Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (noting that "testing is a use of the invention that may infringe under

§271(a)").

60.    By way of example, Defendant has infringed and continues to infringe at least one
or more claims of the '756 Patent, including at least Claim 1. Attached hereto as Exhibit E is an
exemplary claim chart detailing representative infringement of Claim 1 of the '756 Patent.

**Induced Infringement – 35 U.S.C. §271(b)**

61.    Plaintiff incorporates the above paragraphs herein by reference, the same as if set
forth herein.

62.    Defendant has been and now is indirectly infringing by way of inducing
infringement by others and/or contributing to the infringement by others of the '756 Patent in the
State of Utah, in this judicial district, and elsewhere in the United States, by, among other things,
making, using, offering for sale, and/or selling, without license or authority, products
incorporating the accused technology. End users include, for example, Defendant's customers and
other third parties interacting with the accused technology.

63.    Defendant had pre-suit knowledge of the Patents-in-Suit as early as June 16, 2014,
when it received Plaintiff's pending patent application for one of the Patents-in-Suit. Defendant
also received pre-suit knowledge of the Patents-in-Suit on October 23, 2023, when it received a
letter from Plaintiff notifying Defendant of Defendant's infringement. Finally, Defendant had
knowledge of the Patents-in-Suit at the time of filing of this suit. *See EON Corp. IP Holdings, LLC v.
Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of
Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed.Cir.2012)) (noting
that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the
knowledge requirement for indirect infringement).

64.    Defendant knew the actions of making, using, selling, offering for sale, and/or

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

importing the Accused Products infringes the '756 Patent and yet Defendant induced and continues to induce others-including partners, customers, and third parties-to directly infringe at least one claim of the '756 Patent under 35 U.S.C. § 271(b). Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

65.     For example, Defendant induces its users to use the infringing Accused Products with their electronic devices, actively prompting infringement by advertising products and providing instructions on how to use them. *See, e.g.*, Ex. F [6] (advertising and selling the Accused Products and providing instructions on how to implement infringing features); Ex. G[7], Ex. H[8] and Ex. I[9] (advertising infringing features); Ex. J[10] (demonstrating infringing features). These resources both advertise the infringing technology and provide detailed directions on how it functions.

66.     The allegations herein support a finding that Defendant induced infringement of the '756 Patent. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct

---

[6] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[7] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[8] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[9] Available at https://www.zagg.com/pro-keys-ipad-10-2.
[10] Available at https://www.youtube.com/watch?v=9HcB2DxC6S4.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

infringer was actually persuaded to infringe by that material.").

### Contributory Infringement – 35 U.S.C. § 271(c)

67.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

68.     Defendant had pre-suit knowledge of the Patents-in-Suit as early as June 16, 2014 when it received Plaintiff's pending patent application for one of the Patents-in-Suit. Defendant also received pre-suit knowledge of the Patents-in-Suit on October 23, 2023 when it received a letter from Plaintiff notifying Defendant of Defendant's infringement. Finally, Defendant had knowledge of the Patents-in-Suit at the time of filing of this suit. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed.Cir.2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

69.     On information and belief, Defendant contributes to its users' infringement of at least Claim 1 of the '756 Patent by actions of making, using, selling, offering for sale, and/or importing the Accused Products that have no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009) (holding that the "substantial non-infringing use" element of a contributory infringement claim applies to an infringing feature or component, and that an "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses).

### Willful Infringement

70.     Plaintiff incorporates the above paragraphs herein by reference, the same as if set forth herein.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

71.     Defendant had pre-suit knowledge of the Patents-in-Suit as early as June 16, 2014 when it received Plaintiff's pending patent application for one of the Patents-in-Suit. Defendant also received pre-suit knowledge of the Patents-in-Suit on October 23, 2023 when it received a letter from Plaintiff notifying Defendant of Defendant's infringement. Finally, Defendant had knowledge of the Patents-in-Suit at the time of filing of this suit. *See EON Corp. IP Holdings, LLC v. Sensus USA, Inc.*, No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. 2012) (citing *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1345 (Fed.Cir.2012)) (noting that the Federal Circuit has determined that post-filing knowledge is sufficient to meet the knowledge requirement for indirect infringement).

72.     Despite its knowledge of the '756 Patent, Defendant has continued to make, use, sell, offer for sale, and/or import the Accused Product in egregious disregard of Plaintiff's patent rights. Defendant has acted recklessly and engaged in willful, wanton, and deliberately acts of infringement of the '756 Patent, justifying an award to Plaintiff of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**Plaintiff Suffered Damages**

73.     Defendant's acts of infringement of the Patents-in-Suit have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. The precise amount of damages will be determined through discovery in this litigation and proven at trial.

<u>COUNT III</u>
(Breach of Contract)

74.     Plaintiff incorporates the above paragraphs herein by reference.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

75.    On July 9, 2014, Plaintiff and Defendant entered into a non-disclosure agreement governing Defendant's receipt and usage of Plaintiff's materials, including prototypes and product renderings.

76.    Per the terms of the NDA, Defendant agreed to:

> use the Confidential Information only for the purposes of evaluating Disclosing Party's business, products, services and any proposed business transaction as well as development of business with or through Disclosing Party. Upon Disclosing Party's disclosure of Confidential Information, Receiving Party shall keep confidential and not disclose the Confidential Information to any other person, firm, or corporation.

*See* Exhibit C, Use of Information. Per the NDA, Confidential Information is also required to be returned "to Disclosing Party at the Disclosing Party's request." *Id*.

77.    Furthermore, the parties agreed that "any action resulting from this Agreement shall be brought in the state or federal courts of competent jurisdiction located in the State of Utah." Additionally, the parties agreed that, "[i]f any Party fails to abide by this Agreement, the other Party will be entitled to specific performance, including immediate issuance of a temporary restraining order or preliminary injunction enforcing this Agreement, and judgment for damages caused by such breach and to any other remedies provided by applicable law.

78.    Defendant's use of Plaintiff's Confidential Information went far beyond due diligence required to evaluate a potential business arrangement, including retaining that Confidential Information for months, which provided Defendant an opportunity to reverse engineer Plaintiff's prototypes. Moreover, Confidential Information was not returned at Plaintiff's request, as Plaintiff's requests to have its prototypes returned were rebuffed multiple times and with no justifiable explanation from Defendant. Defendant also failed to keep confidential

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff's Confidential Information by releasing a product publicly which incorporated Plaintiff's Confidential Information.

79.     Plaintiff became aware of Defendant's breach in August 2023, when Plaintiff's counsel brought various Accused Products of Defendant to Plaintiff's attention.

80.     Defendant's failure to perform under the NDA has caused Plaintiff substantial damage and injury and it is entitled to judgment against Defendant accordingly, including a temporary restraining order or preliminary injunction preventing from Defendant from using Plaintiff's confidential materials, such as by selling the Accused Products which incorporates Plaintiff's confidential materials and trade secrets. Plaintiff is further entitled to an award of all of its costs and attorney's fees as provided in the written agreements and otherwise.

<u>COUNT IV</u>
**(Accounting)**

81.     Plaintiff incorporates the above paragraphs herein by reference.

82.     Since Defendant has misappropriated Plaintiff's intellectual property and is doing so for profit, Plaintiff is entitled to a full and complete accounting of all income received by Defendant since the theft of Plaintiff's intellectual property in August of 2014, in order to determine the degree to which Defendant has been unjustly enriched by Plaintiff. This includes but is not limited to a list of its customers (with their addresses and phone numbers), what they have each paid to date and to whom, and a thorough explanation of how those customers came to do business with Zagg, including but not limited to any customers to whom Zagg demonstrated Plaintiff's prototypes or other confidential materials.

<u>DEMAND FOR JURY TRIAL</u>

83.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

## REQUEST FOR RELIEF

84.    Plaintiff incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)    enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)    enter a judgment awarding Plaintiff all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)    enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the Patents-in-Suit;

(d)    issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit, pursuant to the terms of the non-disclosure agreement breached by Defendant;

(e)    enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest;

(f)    an order compelling Defendant to make a full and complete accounting of all income received since the misappropriation of Plaintiff's intellectual property and trade secrets, including how Defendant received it, how Defendant obtained any and all

20

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

customers they have obtained since the misappropriation of Plaintiff's intellectual property and trade secrets, and the names and addresses of the customers they have had since Defendant became organized under the laws of Nevada and its website became operational, all costs thereof to be borne by Defendant; and

(g)    award Plaintiff all other relief that the Court may deem just and proper.

Dated: March 17, 2025                                   Respectfully submitted,


By: /s/  *Charles L. Roberts*
Charles L. Roberts (#5137)
Wasatch-IP, A Professional Corp.
2825 E. Cottonwood Parkway, Suite 500
Salt Lake City, UT  84121
801-292-5300
croberts@wasatch-ip.com

Kirk J. Anderson (CA SBN 289043)
(*Pro Hac Vice forthcoming*)
kanderson@budolaw.com
Budo Law P.C.
5610 Ward Rd., Suite #300
Arvada, CO 80002
(720) 225-9440 (Phone)
(720) 225-9331 (Fax)

*Attorneys for Plaintiff, NewFlux, LLC*

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL